IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

DAYNA LYNN KANARY, )
)
        Plaintiff, )
)
        v. ) Civil Action No. 17-1027
)
NANCY A. BERRYHILL, )
*Acting Commissioner of Social Security*, )
)
        Defendant. )

**O R D E R**

AND NOW, this 26th day of September, 2018, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 11) filed in the above-captioned matter on December 13, 2017,

IT IS HEREBY ORDERED that said Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 9) filed in the above-captioned matter on November 13, 2017,

IT IS HEREBY ORDERED that said Motion is GRANTED IN PART and DENIED IN PART. Specifically, Plaintiff's Motion is granted to the extent that it seeks a remand to the Commissioner of Social Security ("Commissioner") for further evaluation as set forth below, and denied in all other respects. Accordingly, this matter is hereby remanded to the Commissioner for further evaluation under sentence four of 42 U.S.C. § 405(g) in light of this Order.

**I.**     **Background**

Plaintiff, Dayna Lynn Kanary, filed a claim for Disability Insurance Benefits under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401-434, effective November 20, 2013, claiming that she became disabled on July 27, 2012, due to multiple sclerosis, related fatigue,

1

optical neuritis, and cognitive, depression, anxiety, and comprehension issues. (R. 39, 184-85, 216). After being denied initially on January 8, 2014, Plaintiff sought, and obtained, a hearing before an Administrative Law Judge ("ALJ") on September 9, 2015. (R. 39, 116, 118-22, 123-24, 56-104). In a decision dated May 11, 2016, the ALJ denied Plaintiff's request for benefits. (R. 39-50). The Appeals Council declined to review the ALJ's decision on June 15, 2017. (R. 3-8). Plaintiff filed a timely appeal with this Court, and the parties have filed cross-motions for summary judgment.

## II. Standard of Review

Judicial review of a social security case is based upon the pleadings and the transcript of the record. See 42 U.S.C. § 405(g). The scope of review is limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact. See Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) (noting that "'[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive'" (quoting 42 U.S.C. § 405(g))); Schaudeck v. Comm'r of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999) (stating that the court has plenary review of all legal issues, and reviews the ALJ's findings of fact to determine whether they are supported by substantial evidence).

"Substantial evidence" is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate'" to support a conclusion. Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999) (quoting Ventura v. Shalala, 55 F.3d 900, 901 (3d Cir. 1995)). However, a "'single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence.'" Morales v. Apfel, 225 F.3d 310, 317 (3d Cir. 2000) (quoting Kent v. Schweiker, 710 F.2d 110,

2

114 (3d Cir. 1983)). "'Nor is evidence substantial if it is overwhelmed by other evidence—particularly certain types of evidence (e.g., that offered by treating physicians)—or if it really constitutes not evidence but mere conclusion.'" Id.

A disability is established when the claimant can demonstrate some medically determinable basis for an impairment that prevents him or her from engaging in any substantial gainful activity for a statutory twelve-month period. See Fargnoli v. Massanari, 247 F.3d 34, 38-39 (3d Cir. 2001). "A claimant is considered unable to engage in any substantial gainful activity 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . .'" Id. at 39 (quoting 42 U.S.C. § 423(d)(2)(A)).

The Social Security Administration has promulgated regulations incorporating a five-step sequential evaluation process for determining whether a claimant is under a disability as defined by the Act. See 20 C.F.R. § 404.1520. In Step One, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. See 20 C.F.R. § 404.1520(a)(4)(i). If so, the disability claim will be denied. See Bowen v. Yuckert, 482 U.S. 137, 140 (1987). If not, the second step of the process is to determine whether the claimant is suffering from a severe impairment. See 20 C.F.R. § 404.1520(a)(4)(ii). "An impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1522. If the claimant fails to show that his or her impairments are "severe," he or she is ineligible for disability benefits. If the claimant does have a severe impairment, however, the Commissioner must proceed to Step Three and determine whether the claimant's impairment meets or equals the

criteria for a listed impairment. See 20 C.F.R. § 404.1520(a)(4)(iii). If a claimant meets a listing, a finding of disability is automatically directed. If the claimant does not meet a listing, the analysis proceeds to Steps Four and Five.

Step Four requires the ALJ to consider whether the claimant retains the residual functional capacity ("RFC") to perform his or her past relevant work, see 20 C.F.R. § 404.1520(a)(4)(iv), and the claimant bears the burden of demonstrating an inability to return to this past relevant work, see Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume his or her former occupation, the evaluation then moves to the fifth and final step.

At this stage, the burden of production shifts to the Commissioner, who must demonstrate that the claimant is capable of performing other available work in the national economy in order to deny a claim of disability. See 20 C.F.R. § 404.1520(a)(4)(v). In making this determination, the ALJ should consider the claimant's RFC, age, education, and past work experience. See id. The ALJ must further analyze the cumulative effect of all the claimant's impairments in determining whether he or she is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523.

### III. The ALJ's Decision

In his May 11, 2016 decision, the ALJ found that Plaintiff met the insured requirements of the Social Security Act through December 31, 2017. (R. 41). Accordingly, to be eligible for DIB benefits, Plaintiff had to establish that she was disabled on or before that date. See 42 U.S.C. §§ 423(a)(1)(A), (c)(1)(B); 20 C.F.R. §§ 404.101, .110, .131.

The ALJ then proceeded to apply the sequential evaluation process when reviewing Plaintiff's claim for benefits. In particular, the ALJ found that Plaintiff had not been engaged in

substantial gainful activity since the alleged onset date of July 27, 2012. (R. 41). The ALJ also found that Plaintiff met the second requirement of the sequential evaluation process insofar as she has the severe impairments of multiple sclerosis ("MS"), major depressive disorder, and anxiety disorder. (R. 41-42). The ALJ found that Plaintiff's obesity did not qualify as a severe impairment. (R. 42). The ALJ concluded that Plaintiff's impairments did not meet or equal any of the listings that would satisfy Step Three. (R. 42-43).

The ALJ went on to find that Plaintiff retained the RFC to perform sedentary work, as defined in 20 C.F.R. § 404.1567(a), with the following additional limitations:

> [T]his individual is limited to occasional climbing ramps and stairs, never ladders, ropes or scaffolds; occasional postural of balancing, stooping, kneeling, crouching or crawling; routine repetitive tasks at SVP 1-2 level; must work in a static low stress environment that involves only simple decisions and infrequent changes and those changes that did occur would be explained and/or demonstrated and could be learned in 30 days or less. Work must not be fast paced or have strict production or time quotas and occasional interaction with the general public.

(R. 44-48). Based on this RFC, Plaintiff established that she is incapable of returning to her past employment; therefore, the ALJ moved on to Step Five. (R. 48).

At Step Five, the ALJ used a vocational expert ("VE") to determine whether or not a significant number of jobs existed in the national economy that Plaintiff could perform. The VE testified that, given Plaintiff's age, education, work experience, and RFC, Plaintiff could perform jobs that exist in significant numbers in the national economy, such as addresser, ticket checker, and polisher. (R. 49-50). Accordingly, the ALJ found that Plaintiff was not disabled. (R. 50).

**IV.**    **Legal Analysis**

Like almost all Social Security cases, the resolution of this case depends on a proper finding of what Plaintiff can and cannot do in regard to work-related activities. However, unlike

5

some other cases, it is just as important here to determine how long she can do it. Although the ALJ's RFC findings clearly identified the occupational limitations Plaintiff has, they were less clear on the issue of whether Plaintiff can sustain through an ordinary work day and week. While the record contains some limited discussion on the issue, a more detailed analysis is needed to allow for the Court to engage in a meaningful review.

RFC is defined as the most that an individual is still able to do despite the limitations caused by his or her impairments. See Fargnoli v. Massanari, 247 F.3d 34, 40 (3d Cir. 2001). See also 20 C.F.R. § 404.1545(a). Not only must an ALJ consider all relevant evidence in determining an individual's RFC, the RFC finding "must 'be accompanied by a clear and satisfactory explication of the basis on which it rests.'" Fargnoli, 247 F.3d at 41 (quoting Cotter v. Harris, 642 F.2d 700, 704 (3d Cir. 1981)). "'[A]n examiner's findings should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which ultimate factual conclusions are based, so that a reviewing court may know the basis for the decision.'" Id. (quoting Cotter, 642 F.2d at 705). See also SSR 96-8p, 1996 WL 374184 (S.S.A.), at *7 ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).").

Also important, though, is determining whether a claimant has the ability to perform at the level suggested by the RFC on a regular basis so as to allow her to work a regular work schedule. Indeed, the RFC is "an assessment of an individual's ability to do sustained work-related physical and mental work activities in a work setting on a regular and continuing basis." SSR 96-8p, at *1. This, in turn, generally requires the ability to engage in work-related activity 8

6

hours a day, for 5 days a week, or an equivalent schedule. See id. The mere fact that a claimant "can perform the range of work required in particular jobs that exist in the local or national economy does not mean that she can perform the work 'on a regular and continuing basis.'" Wallace v. Apfel, No. 97-6912, 1998 WL 967376, at *4 (E.D. Pa. Nov. 24, 1998) (quoting SSR 96-8p). An ALJ must also determine that the claimant can perform these jobs 8 hours a day, for 5 days a week, or the equivalent. See id. See also Kangas v. Bowen, 823 F.2d 775, 777-78 (3d Cir. 1987). Although the ALJ here thoroughly discussed the ways in which he formulated Plaintiff's RFC, there is one issue that is very prevalent in the record but that received comparatively little treatment in the ALJ's decision – the fatigue associated with Plaintiff's MS. Plaintiff's abilities and limitations in performing work-related tasks were considered and discussed by the ALJ at significant length. What was not discussed in such detail was the issue of how long Plaintiff could sustain those tasks.

As Plaintiff points out, two of her treating health care professionals, Rock Heyman, M.D., the physician treating her MS, and Ellen Redinbaugh, Ph.D., her treating psychologist, both opined that because of, *inter alia*, her fatigue, she lacked the stamina to work full time. (R. 423, 468, 487, 661). While the ALJ certainly considered the opinions of Drs. Heyman and Redinbaugh, he did not really address the stamina-related aspects of the opinions or the issue of whether this fatigue would prevent Plaintiff from working on a regular and continuing basis. While the ALJ was not obligated to merely accept these opinions as to Plaintiff's stamina, under the circumstances of this case, he did need to address them more directly. See Wallace, 1998 WL 967376, at **3-5 (remanding where ALJ failed to discuss adequately record evidence suggesting a claimant's inability to work a regular work schedule).

7

Part of the ALJ's basis for giving little weight to the opinions of Drs. Heyman and Redinbaugh was that they were supposedly inconsistent with the essentially normal clinical findings contained in the record. (R. 48). However, the record is replete with examples of Plaintiff's issues with fatigue being addressed by her doctors. (See, e.g., R. 339, 361-62, 417, 419, 429, 446, 472, 485, 551, 562, 565, 572, 593, 603, 608, 617, 658). Dr. Heyman identified fatigue as Plaintiff's one severe condition based on her neurological scores. (R. 348). The ALJ did not discuss how these numerous citations to fatigue fit in with what he found to be Plaintiff's normal clinical findings. The record also includes evidence that, in connection with her previous employment, Plaintiff was permitted to lay down for 30-45 minutes, three or four times a week, due to fatigue. (R. 88-89). Plaintiff identified fatigue as one of the primary reasons she believed that she could not work a full-time job. (R. 73). Moreover, the VE clearly believed the issue of how long Plaintiff could sustain work-related activities to be relevant. (R. 98).

Given the potential record support for the opinions of Drs. Heyman and Redinbaugh relating to Plaintiff's fatigue,[1] the ALJ was required to engage in a more focused discussion of that aspect of the doctors' opinions and of Plaintiff's ability to sustain work-related activities on a regular and continuing basis generally. This is particularly true in light of the greater weight generally afforded to the opinions of a claimant's treating physicians. See Fargnoli, 247 F.3d at 43; Plummer v. Apfel, 186 F.3d 422, 429 (3d Cir. 1999); 20 C.F.R. § 404.1527(c)(2). Absent a more thorough discussion of what appears to be a central issue in this matter, the Court cannot say whether the ALJ rejected Plaintiff's treating physicians' opinions that she could not sustain a full work schedule for "no reason or the wrong reason." Plummer, 186 F.3d at 429.

---

[1] That is not to say that the point is absolutely uncontradicted in the record. Several entries may imply a lower level of fatigue. (See, e.g., R. 503, 585).

As noted, the Court is not suggesting that the record conclusively demonstrates debilitating fatigue that would render Plaintiff disabled. Indeed, as the ALJ noted, the opinion of the state reviewing agent also must be considered in determining Plaintiff's RFC. However, there is enough evidence in the record, and the issue is so central to the case, so as to require a more focused discussion as to the aspects of Dr. Heyman's and Dr. Redinbaugh's opinions pertaining to fatigue. On remand, this issue should be more closely examined to determine whether Plaintiff's fatigue necessitates additional restrictions to her RFC and/or otherwise impacts her ability to engage in substantial gainful employment. The Court is not suggesting that any particular additional limitations must be included in Plaintiff's RFC, and it acknowledges that the ALJ may have felt that the issue was sufficiently resolved by limiting Plaintiff to a reduced range of sedentary work. It is the need for a clearer record on the issue of Plaintiff's fatigue and her ability to engage in sustained work-related physical and mental work activities in a work setting on a regular and continuing basis that warrants the remand here. The Court further notes that, particularly given that the remand is based on a need for more analysis by the ALJ, the record does not permit the Court to reverse and remand the case for an award of benefits. See Podedworny v. Harris, 745 F.2d 210, 221-22 (3d Cir. 1984).[2]

---

[2] The Court does not reach any other issue raised by Plaintiff, but emphasizes that the ALJ should be cognizant of these issues on remand.

## V. Conclusion

In short, the record does not permit the Court to determine whether the findings of the ALJ regarding Plaintiff's RFC are supported by substantial evidence, particularly his findings in regard to whether Plaintiff retained the ability to do sustained work-related physical and mental work activities in a work setting on a regular and continuing basis. Accordingly, the Court finds that substantial evidence does not support the ALJ's decision in this case, and the case is remanded to the Commissioner for reconsideration consistent with this Order.

s/Alan N. Bloch<br>
United States District Judge

ecf:	Counsel of record